IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| VALENTINA PULNIKOVA, | ) ) ) | |
| Plaintiff, | ) ) | No. 22-1664 C |
| v. | ) ) ) | Filed: July 25, 2023 |
| THE UNITED STATES, | ) ) ) | |
| Defendant. | ) ) | |

# MEMORANDUM OPINION AND ORDER

Plaintiff brings this suit against the United States and the United States Patent and Trademark Office ("USPTO"), claiming violations of 42 U.S.C. § 1983 for alleged falsifications committed by the agency in the review of Plaintiff's patent applications. Before the Court are the Government's Motion to Dismiss under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") for lack of subject-matter jurisdiction and Plaintiff's Motion for Leave to File Surreply. For the reasons discussed below, the Court **GRANTS** both motions.

## I.   BACKGROUND

### A.   Factual Background

Plaintiff, Dr. Valentina Pulnikova, brings this case to recover over $1.7 billion from the USPTO. Pl.'s Compl. ¶¶ 1.3, 1.6, ECF No. 1. Plaintiff is an inventor, and between 2006 and 2007 she submitted four patent applications to the USPTO. *Id.* ¶¶ 4.1.1–4.1.4. Although Plaintiff successfully received patents for all four applications, she alleges that the USPTO falsified the patent process. *Id.* ¶ 4.10.13. During the period between patent application and patent allowance, Plaintiff appealed to various authorities to challenge the alleged falsifications as outlined below.

The patents Plaintiff sought for her inventions are related to the online market. *Id.* ¶ 4.2. Specifically, the patents are for: (1) "System and method of global electronic trade in the Internet" ("Electronic Trade"), application dated October 26, 2006, and published by the USPTO on December 13, 2007, *id.* ¶ 4.1.1; (2) "System and method of global electronic job market in the Internet" ("Electronic Job Market"), application dated March 11, 2007, and published by the USPTO on September 11, 2008, *id.* ¶ 4.1.2; (3) "System and method of global electronic market of educational services in the Internet" ("Educational Services"), application dated June 21, 2007, and published by the USPTO on December 25, 2008, *id.* ¶ 4.1.4; and (4) "Retrieval system and method of searching of information in the Internet" ("Retrieval System"), application dated December 19, 2007, and published by the USPTO on June 25, 2009, *id.* ¶ 4.1.3. Different patent examiners reviewed her four inventions. *Id.* ¶ 4.9.1.4. During the application process, the patent examiners sent written correspondence, known as "Office Actions," to Plaintiff identifying information she needed to correct in her applications to continue the application process. *See, e.g.*, *id.* ¶¶ 4.6, 4.9, 4.9.1.1, 4.9.1.3, 4.9.2, 4.10.1. Plaintiff characterizes the corrections requested by the patent examiners as "violations" and, in response, she lodged several appeals. *Id.* ¶ 4.9.1.5. Plaintiff refers to her appeals and responses to Office Actions as "appeal-books" because they span hundreds, and sometimes thousands, of pages. *Id.* Plaintiff alleges that, in these appeals, she demonstrated how her inventions conformed to U.S. patent law. *Id.* ¶ 4.10.2. According to Plaintiff, to write these appeals (sometimes for multiple inventions at the same time) she studied U.S. patent law, the Manual of Patent Examining Procedure, and all publications referred to her by the patent examiners. *Id.* ¶¶ 4.10.2.3–4.10.2.4.

In her Complaint, Plaintiff contends that her first communication with the USPTO occurred on June 14, 2012, when she received a "Notice of Non-Compliant Amendment" from the Agency.

*Id.* ¶ 4.4. In response, on July 2, 2012, Plaintiff appealed the Notice and demanded disqualification of the patent examiner. *Id.* Eleven days later, she received a letter from the USPTO claiming that the Notice of Non-Compliant Amendment was sent in error. *Id.* Plaintiff's next communication with the USPTO was on June 11, 2013, when she received a Final Office Action regarding the Retrieval System application. *Id.* ¶ 4.10.8.3. Plaintiff responded on November 3, 2013, by sending the Board of Patent Appeals and Interferences a 631-page appeal. *Id.* She received a 39-page Answer from the patent examiner on January 29, 2014. *Id.*

Around this time, Plaintiff began writing more responses to Office Actions. On February 9, 2014, she sent a "Transmittal letter" petitioning for an extension of time to appeal to the USPTO to accommodate having to write multiple appeals simultaneously. *Id.* ¶ 4.10.2.6. Although her request was denied, she still completed two appeals within the following two months. On March 27, 2014, Plaintiff submitted an appeal addressing both a Final Office Action mailed to her on June 11, 2013, and the Answer she received from the patent examiner on January 29, 2014. *Id.* This appeal totaled 1,439 pages. *Id.* ¶ 4.10.8.1. On April 1, 2014, Plaintiff appealed a Final Office Action sent to her on November 8, 2013, regarding the Electronic Job Market application. *Id.* ¶ 4.10.2.6. This appeal was 491 pages long. *Id.* ¶ 4.10.8.1. Later that month, on April 17, 2014, Plaintiff sent a letter to the USPTO Director protesting what she deemed to be a continuing attack on her intellectual property by the USPTO. *Id.* ¶ 4.10.2.5. On the same day, she also faxed a copy of the letter to the Senate Judiciary Committee. *Id.*

On June 5, 2014, Plaintiff received a 25-page Answer from a patent examiner regarding two of her patent applications (Electronic Job Market and Electronic Trade). *Id.* ¶¶ 4.10.2.5, 4.10.8.1. On July 14, 2014, Plaintiff sent an appeal about the Electronic Job Market application

3

in response to the examiner's Answer and to an Office Action that she received dated November 8, 2013. *Id.* ¶ 4.10.8.2. This appeal was 988 pages. *Id.*

Almost two years later, on March 10, 2016, Plaintiff received a Decision on Appeal for the Retrieval System application from the Patent Trial and Appeal Board, affirming the patent examiner's rejections. *Id.* ¶ 4.10.9.1. Plaintiff responded by writing an appeal dated May 4, 2016, to the Commissioner for Patents. *Id.* This 594-page appeal alleged that the patent examiner and patent judges falsified facts and did not follow patent law. *Id.* Early the next year, on January 10, 2017, Plaintiff sent a letter to the USPTO Director expressing her dissatisfaction with what she characterized as a continuation of attacks by the USPTO on her inventions. *Id.* ¶ 4.9.2.6. On February 3, 2017, Plaintiff received from the USPTO a document stating that the Agency acknowledged her previous January 10, 2017, letter. *Id.* On March 28, 2017, Plaintiff received another Decision on Appeal, this time for the Electronic Job Market application, affirming the patent examiner's rejection of certain claims. *Id.* ¶ 4.10.9. Believing the decision to be falsified, on June 20, 2017, Plaintiff wrote a 13-page letter to the USPTO Director protesting the actions of the administrative patent judges. *Id.*

Although the examination and appeals process lasted over twelve years, Plaintiff ultimately received all four patents for which she applied. *Id.* ¶¶ 4.10.13–4.10.13.4. Nevertheless, she continued to seek redress for the alleged harm caused to her in the patent process. On June 20, 2017, she sent a letter to the Senate Judiciary Committee concerning the administrative patent judges' examination of her patent applications. *Id.* ¶ 4.10.9. She received no response. *Id.* ¶ 4.10.1.2. On August 20, 2017, Plaintiff wrote a 109-page letter to the USPTO Director requesting compensation for the damage caused by the alleged falsifications in the patent application process. *Id.* ¶¶ 4.7, 4.10.17.1. She also wrote to the United States Attorney General

4

on February 25, 2020, asking for assistance in obtaining compensation from the USPTO. *Id.* ¶ 4.7. In total, her request was 2,401 pages, 97 pages being the petition itself with appendices comprising the remaining pages. *Id.* ¶ 4.10.17.2. Neither the USPTO Director nor the United States Attorney General responded to her requests. *Id.* ¶ 4.7.

### B. Procedural History

On November 7, 2022, Plaintiff filed the present suit. *See generally* ECF No. 1. She alleges that writing the appeal-books supporting her inventions' patentability violated her rights because the USPTO falsified the underlying Office Actions prompting the appeals. *Id.* ¶ 4.10.2. Plaintiff asserts that the USPTO should have, in the first instance, presumed her inventions complied with U.S. patent law. *Id.* According to Plaintiff, if her inventions did not comply, the USPTO—not Plaintiff—had the burden of proving they did not meet the requirements. *Id.* Furthermore, she alleges that the USPTO's publishing of her patent applications allowed others to use her inventions, and this too violated her rights. *Id.* ¶ 1.4. Plaintiff alleges that writing the appeals, receiving the USPTO's Office Actions containing falsifications, and having her inventions published all led to the destruction of her intellectual property and caused her to suffer psychological damage. *Id.* ¶¶ 4.6, 4.10.8.3.

The Complaint expressly states that it is brought under 42 U.S.C. § 1983. *Id.* ¶ 1.2. As a remedy, Plaintiff seeks monetary damages from the Government equaling $1,774,360,000. *Id.* ¶ 5. The damages amount is comprised of $126.36 million in actual damages for writing the appeal-books and the instant Complaint and $1.648 billion to compensate her for the psychological injury she incurred. *Id.* ¶¶ 4.10.16, 4.10.17.1, 4.10.17.2, 4.10.18, 4.10.19. Additionally, Plaintiff seeks to recover the $402 filing fee. *Id.* ¶ 5.2.

On January 9, 2023, the Government moved to dismiss this action pursuant to RCFC 12(b)(1), arguing that the Court lacks jurisdiction over § 1983 claims and tort claims.[1] Def.'s Mot. to Dismiss at 1, ECF No. 7.  The Government asserts that only federal district courts have authority to entertain § 1983 claims, and that Plaintiff's allegations of psychological injury are tort claims expressly excluded from the Court's jurisdiction under the Tucker Act.  *Id.* at 3–6.  On February 2, 2023, Plaintiff submitted a response titled "Plaintiff's motion to dismiss [D]efendant's motion."  *See* ECF No. 8.  Plaintiff's response affirms her basis for jurisdiction under § 1983 and disagrees that only district courts may hear such claims.  *Id.* ¶ 1.5.  Regarding her purported tort claims, Plaintiff argues she cannot sue the Government under the Federal Tort Claims Act ("FTCA") because 28 U.S.C. § 2680(h) gives the United States immunity from suit based on claims arising from "misrepresentation, deceit, or interference with contract rights . . . ."  *Id.* ¶¶ 2.2–2.3.  Plaintiff further claims she cannot sue under the FTCA since the USPTO committed intentional torts and, according to Plaintiff, the FTCA prohibits claims arising from intentional torts.  *Id.*

On March 28, 2023, the Government filed a reply in support of its motion to dismiss.  *See* Def.'s Reply to Mot. to Dismiss, ECF No. 16.  On May 24, 2023, Plaintiff filed a response to the Government's reply in a document titled "Plaintiff's motion to dismiss the 'reply in support of defendant's motion to dismiss.'"  *See* ECF No. 20.  The Court construed this additional response as a Motion for Leave to File Surreply.

---

[1] The Government also moved to dismiss on the grounds that the Court of Federal Claims does not have jurisdiction over the examination of patent applications or to review patent term extensions.  Def.'s Mot. to Dismiss at 6, 7, ECF No. 7.  Plaintiff disputes that she asked for this relief.  Pl.'s Resp. to Def.'s Mot. to Dismiss ¶ 3.2, ECF No. 8.  The Government accepts this clarification and agrees there is no dispute regarding these two points.  Def.'s Reply to Mot. to Dismiss at 6, ECF No. 16.  Therefore, the Court need not address these additional bases.

### C.  Legal Standard

On a motion to dismiss under RCFC 12(b)(1), "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)). If the Court determines that it lacks subject-matter jurisdiction, it must dismiss the action. RCFC 12(b)(1), (h)(3); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868))).

When a plaintiff files a complaint as a *pro se* litigant, the Court construes the allegations liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980); *Durr v. Nicholson*, 400 F.3d 1375, 1380 (Fed. Cir. 2005). Despite this leniency, a *pro se* litigant must still "comply with the applicable rules of procedural and substantive law." *Walsh v. United States*, 3 Cl. Ct. 539, 541 (Fed. Cir. 1983); *see Kelley v. U.S. Dep't of Lab.*, 812 F.2d 1378, 1380 (Fed. Cir. 1987). When reviewing a *pro se* litigant's pleadings, the Court should not become an advocate. *Etienne v. United States*, No. 22-269C, 2022 WL 2223142, at *3 (Fed. Cl. June 21, 2022). Rather, the Court must merely construe the pleadings so as to "give[] the litigant every opportunity to make out a claim for relief . . . ." *Id.* Regardless of *pro se* status, however, a plaintiff always bears the burden of establishing subject-matter jurisdiction. *See Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). The plaintiff has the burden of proving jurisdiction by a preponderance of the evidence. *Etienne*, 2022 WL 2223142, at *2.

The Court of Federal Claims is a court of limited jurisdiction. *Martin v. United States*, 99 Fed. Cl. 627, 631 (2011). The Court derives its power primarily from the Tucker Act, which provides, in relevant part:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2018). The Tucker Act is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Therefore, to meet her burden, a plaintiff must make a nonfrivolous assertion that she is within the class of plaintiffs eligible for relief under a money-mandating source. *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1307 (Fed. Cir. 2008).

## II. DISCUSSION

### A. Plaintiff's Motion for Leave to File Surreply is Granted.

As a preliminary matter, the Court must resolve Plaintiff's deemed request to file a surreply. *Schmidt v. Shah*, 696 F. Supp. 2d 44, 59 (D.D.C. 2010) (whether to grant or deny leave to file a surreply is solely within the sound discretion of the court). Although a surreply is not permitted under the rules and is generally disfavored, especially if it is merely cumulative, a court may allow a surreply filed by a *pro se* litigant to help discern her precise legal claims. *Id.* at 60 (citing *Wada v. U.S. Secret Serv.*, 525 F. Supp. 2d 1, 9 (D.D.C. 2007)); *see Johnson v. United States*, 123 Fed. Cl. 174, 177 (2015) (examining both a *pro se* plaintiff's response brief and surreply to "attempt[] to discern all of plaintiff's legal arguments"). The Court finds that Plaintiff's Surreply provides greater clarity to the allegations in the Complaint and the arguments set forth in her prior response. The Court will therefore grant Plaintiff's Motion for Leave to File Surreply.

**B.     The Court Lacks Jurisdiction to Hear § 1983 Claims.**

The Court does not have jurisdiction to hear civil rights claims under § 1983. Section 1983 codifies section 1 of the Civil Rights Act of 1871 and "create[s] a damages remedy against every state official for the violation of any person's federal constitutional or statutory rights."[2] *Kalina v. Fletcher*, 522 U.S. 118, 123 (1997). Section 1983 is not in itself a source of any substantive right but is rather a method for vindicating federal civil rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

It is well settled that this Court "lacks jurisdiction to hear claims alleging deprivation of civil rights under color of law." *Kortlander v. United States*, 107 Fed. Cl. 357, 369 (2012) (collecting cases); *see Ajamian v. United States*, 609 F. App'x 652, 654 (Fed. Cir. 2015). The "exclusive jurisdiction to hear civil rights claims [at the federal level] resides in the federal district courts." *Kortlander*, 107 Fed. Cl. at 369 (citing 28 U.S.C. § 1343(a)(4)). Section 1343(a) of Title 28 expressly states that "district courts shall have original jurisdiction of any civil action," 28 U.S.C. § 1343(a) (2018), "[t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights," *id.* § 1343(a)(4). A long line of cases confirms that jurisdiction for such claims lies solely in the district courts. *See, e.g.*, *Blassingame v. United States*, 33 Fed. Cl. 504, 505 (1995) (holding that district courts are given jurisdiction over § 1983 claims by virtue of § 1343(a)(4) and there is no equivalent jurisdiction for the Court of Federal Claims), *aff'd*, 73 F.3d 379 (Fed. Cir. 1995); *Elkins v. United States*, 229 Ct. Cl. 607, 608 (1981) ("[W]e do not have jurisdiction over claims based upon alleged violations of civil rights

---

[2] Section 1983 applies only to state or local government officials. The Supreme Court recognized a federal analog in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). This Court similarly lacks jurisdiction over *Bivens* claims. *See, e.g.*, *Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir. 1997) ("*Bivens* actions . . . lie outside the jurisdiction of the Court of Federal Claims.").

9

laws."); *May v. United States*, 104 Fed. Cl. 278, 284 (2012) ("[O]nly United States District Courts have subject matter jurisdiction to adjudicate statutory civil rights claims."); *Willis v. United States*, 96 Fed. Cl. 467, 470 (2011) ("It is well-settled that jurisdiction for civil rights claims . . . lies exclusively in the district courts; not in the Court of Federal Claims."); *McCullough v. United States*, 76 Fed. Cl. 1, 5 (2006) (referencing 42 U.S.C. § 1983, explaining that "[a] claim for deprivation of rights under color of law does not provide a basis for jurisdiction because the district courts have exclusive original jurisdiction to adjudicate claims alleging violations of civil rights").

Accordingly, the Court lacks jurisdiction to entertain Plaintiff's § 1983 claim.[3]

C.      **The Court Lacks Jurisdiction Over Plaintiff's Tort Claims.**

The Court also lacks jurisdiction over claims of "emotional pressure" and "psychological injury" due to emotional distress, which sound in tort. ECF No. 7 at 4; *see id.* at 6. As a general matter, the Court of Federal Claims cannot hear tort actions because the Tucker Act expressly removes such actions from the Court's jurisdiction. *See Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997); 28 U.S.C. § 1491(a)(1). This includes claims related to emotional distress. *See, e.g.*, *Treece v. United States*, 96 Fed. Cl. 226, 232 (2010) ("[T]his Court lacks jurisdiction to award damages for pain and suffering and emotional distress . . . . Because plaintiff's fraud and emotional distress claims are tort claims, they are dismissed for lack of jurisdiction."); *Ancman v. United States*, 77 Fed. Cl. 368, 373 (2007) ("Claims for pain and suffering, emotional distress, and

---

[3] Because the Court lacks jurisdiction on this basis, it is unnecessary to address the Government's alternative request for dismissal for failure to state a claim. *See* ECF No. 7 at 4 n.3 (arguing that since Plaintiff failed to identify either a constitutional right or federal statute that was violated by a person acting under color of state law—a necessary element to a § 1983 action—her claim should be dismissed under RCFC 12(b)(6)). Nonetheless, the Court agrees with the Government's reading of the statute and the requirements for pleading a § 1983 claim. *See West v. Atkins*, 487 U.S. 42, 46 (1988) (holding that for § 1983 actions there is a "requisite nexus to the state").

mental anguish sound in tort, and this court does not possess jurisdiction over tort claims."). It also includes claims premised on fraudulent government action or other tortious government misconduct. *See Brown*, 105 F.3d at 623 (holding that claims "for fraudulent assessment[s] are grounded upon fraud, which is a tort" (internal quotation marks omitted)); *New Am. Shipbuilders, Inc. v. United States*, 871 F.2d 1077, 1079 (Fed. Cir. 1989) (confirming that when "government misconduct alleged [i]s tortious, jurisdiction is not granted [to] the Claims Court under the Tucker Act . . . .").

Plaintiff contests the Government's contention that her claims lie in tort, stating "that the Attorney did not understand the essence of [her] Complaint." ECF No. 8 ¶ 2.4. She claims that intentional torts are excepted from the FTCA, and thus she has instead alleged willful violations of patent law by the USPTO and breach of contract. *Id.* ¶¶ 2.2–2.3; *see* ECF No. 20 ¶ 1; ECF No. 1 ¶ 1.3 (alleging Plaintiff had four "agreements" with the USPTO "to conduct the examination of [her] 4 [] patent applications"). A claim based on a contract with the federal government is within the Court's jurisdiction; however, the Court is not bound by a litigant's "conclusory legal characterizations." *Perry v. United States*, 149 Fed. Cl. 1, 17 (2020), *aff'd*, No. 2020-2084, 2021 WL 2935075 (Fed. Cir. July 13, 2021). Moreover, to invoke the Court's jurisdiction, a pleading must assert at least "[a] non-frivolous allegation that a contract exists between a plaintiff and the United States . . . ." *Ibrahim v. United States*, 799 F. App'x 865, 867 (Fed. Cir. 2020); *see Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1355 (Fed. Cir. 2011).

Plaintiff's Complaint does nothing more than mention an "agreement," and fails to point the Court to any substantive provision of any purported contract, either express or implied, that could provide a basis of jurisdiction. ECF No. 1 ¶ 1.3. The greatest extent to which Plaintiff mentions any breach of an "agreement" is in relation to the USPTO's alleged violations of U.S.

11

patent law.  *See, e.g.*, *id.* ¶¶ 1.2, 1.3, 4.9, 4.9.1.1, 4.9.1.4, 4.10.3, 4.10.3.2, 4.10.8.3.  However, "[t]his Court has long recognized that 'a duty imposed by law [does] not create a contract within the Tucker Act jurisdiction of the [C]ourt.'"  *eVideo Owners v. United States*, 126 Fed. Cl. 95, 104 (2016) (quoting *Lion Raisins, Inc. v. United States*, 54 Fed. Cl. 427, 432 (2002)), *aff'd*, 680 F. App'x 1004 (Fed. Cir. 2017).  And courts have rejected the characterization of similar allegations brought by patent applicants as asserting express or implied-in-fact contract claims that may be heard in this Court.  *See Perry*, 149 Fed. Cl. at 19 (citing *Constant v. United States*, 861 F.2d 728, 1988 WL 94630, at *1 (Fed. Cir. Sept. 13, 1988) (unpublished) (emphasizing that the patenting process is not a contracting process); *Arunachalam v. Pazuniak*, No. 15-259-RGA, 2018 WL 4603265, at *5 (D. Del. Sept. 25, 2018) (holding that a litigant who was issued a patent did "not have a contract with the USPTO")).

The Court agrees with the Government that the "psychological injury," for which the bulk of damages are sought, is legally similar to emotional distress and falls into the category of a tort that the Court is not able to hear.  *See* ECF No. 7 at 6 (citing *Etienne*, 2022 WL 2223142, at *3 (holding that claim for emotional distress caused by the USPTO was properly characterized as a tort claim)).  The Court therefore lacks jurisdiction over these claims.

    **D.**    **There is Limited Redress for Patent Claims in the Court of Federal Claims.**

Although Plaintiff disclaims that her Complaint seeks review the USPTO's actions or decisions respecting her patent applications, it bears noting that the Court's jurisdiction with respect to patent-related claims is typically limited to claims for patent infringement.  *See Etienne*, 2022 WL 2223142, at *3; *see also Perry*, 149 Fed. Cl. at 15 (explaining that the Court's patent jurisdiction under 28 U.S.C. § 1498(a) is limited "only to patent infringement claims against the government, rather than embracing any and all patent-related claims based on the government's

actions"); 28 U.S.C. § 1498(a).  Moreover, the Court is also without authority "to generally review an agency's actions."  *Perry*, 149 Fed. Cl. at 16 (citing *Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1370 n.11 (Fed. Cir. 2005)).  This includes the actions of the USPTO.  *See id.*

The allegations articulated in Plaintiff's Complaint regarding the USPTO's conduct seem to have occurred in the routine patent examination process.  *See* 35 U.S.C. § 122(b)(1)(A) (2018) (providing for publication of patent applications); *id.* § 132(a) (providing that the USPTO must notify an applicant when claims for a patent are rejected or objections are made and providing for reexamination at the applicant's request).[4]  There are established remedies for challenging unfavorable decisions from the USPTO.  *See, e.g.*, 35 U.S.C. §§ 134, 141 (allowing an applicant to appeal a rejection to the Patent Trial and Appeal Board and seek further review in the Court of Appeals for the Federal Circuit).  Seeking monetary compensation from the United States in the Court of Federal Claims is not one of them.  Accordingly, while the Court can sympathize with the time and effort expended by Plaintiff in securing her patents, the Court has no avenue to compensate Plaintiff for her efforts or any frustration she felt during the patenting process.

### III. CONCLUSION

For the reasons outlined above, the Court **GRANTS** Plaintiff's Motion for Leave to File Surreply (ECF No. 20).  The Court **GRANTS** the Government's Motion to Dismiss under RCFC 12(b)(1) (ECF No. 7).  The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

Dated: July 25, 2023	/s/ Kathryn C. Davis
	KATHRYN C. DAVIS
	Judge

---

[4] From the Court's review of the USB appendices to Plaintiff's Complaint, this seems to be an accurate description of Plaintiff's course of dealings with the UPSTO.

13